# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ORTHOPEDIC RESOURCES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-732-CVE-TLW |
| | ) | |
| **NAUTILUS INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court are the Motion for Summary Judgment and Supporting Brief of Plaintiff and Counterclaim Defendant Orthopedic Resources, Inc. (Dkt. # 15) and Defendant Nautilus Insurance Company's Motion for Summary Judgment and Brief in Support (Dkt. # 16). Plaintiff seeks a declaratory judgment that it is entitled to coverage from defendant and defendant seeks a declaratory judgment that plaintiff is not entitled to coverage based on an exclusion in the insurance policy. Both parties assert that no genuine issue of material fact precludes summary judgment.

### I.

The following material facts are undisputed: Orthopedic Resources, Inc. (ORI) is an Oklahoma corporation involved in the distribution of medical equipment. Nautilus Insurance Company (Nautilus) is an Arizona corporation, doing business in the State of Oklahoma. The equipment ORI distributes includes a therapy system called VascuTherm. VascuTherm is a device manufactured by ThermaTek that provides thermal heating, cooling, and compression in order to reduce post-operative swelling. In 2008, pursuant to a Marketing Agreement (the Agreement) with

John Wall of JTW Medical Products, Inc. (JTW), ORI provided JTW with approximately twenty-six VascuTherm units, which JTW in turn provided to patients and healthcare providers.[1]

Nautilus issued a policy of insurance to Every Little Bit, Inc. d/b/a JPS Surgical Orthopedic Resources, Inc.[2] -- Commercial General Liability (CGL) Insurance Policy No. NC669841 (the Policy). Dkt. # 26-7, at 1. The Policy provided general liability coverage and coverage for certain specified bodily injury[3] and property damage during the Policy period May 24, 2007 to May 24, 2008. The bodily injury coverage agreement provides in relevant part:

> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . . ."

Dkt. # 26-7, at 7.

---

[1] The parties dispute the nature of the relationship between ORI and JTW. However, the Agreement between ORI and JTW states that JTW would "act as an agent for ORI in the selling of services of the Vacutherm [sic] Pneumatic Compression products for the Dallas area as of 2/27/08 for a period of 1 year." Dkt. # 28-3. JTW was to receive a commission from ORI. Id.

[2] The parties do not dispute that ORI a named insured under the Policy.

[3] Bodily injury is defined, in relevant part, as "bodily injury, sickness or disease sustained by a person . . . ." Dkt. # 26-7, at 18. Defendant does not dispute that the injury alleged by the plaintiff in the underlying lawsuit is a "bodily injury," as defined in the Policy. Dkt. # 26, at 7.

The Policy contains a provision entitled "EXCLUSION - PRODUCTS-COMPLETED OPERATIONS HAZARD" (the Exclusion). Id. at 23. The Exclusion provides that: "[t]his insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'" Id. The Policy defines that hazard as:

> 16. "Products-completed operations hazard":
>
> > a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
> >
> > > (1) Products that are still in your physical possession; or
> > >
> > > (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
> > >
> > > > (a) When all of the work called for in your contract has been completed.
> > > >
> > > > (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> > > >
> > > > (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
> > >
> > > Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Id. at 20.

The Policy defines "your product" as:

21.   "Your product":

    a.    Means:

        (1)    Any goods or products, other than real property, manufactured, sold, handled or disposed of by:

            (a)    You;

            (b)    Others trading under your name; or

            (c)    A person or organization whose business or assets you have acquired; and

        (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products. . . .

Id. at 21. "Your product" also includes: "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and [t]he providing of or failure to provide warnings or instructions," but does not include "vending machines or other property rented to or located for the use of others but not sold." Id.

"Your work" is defined as "[w]ork or operations performed by you or on your behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations" and includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and [t]he providing of or failure to provide warnings or instructions." Id.

On September 26, 2008, Kara and Jeremy Swindell filed a lawsuit against ORI and others in the District Court for Dallas County, Texas (the Swindell lawsuit). Dkt. # 16 at 2. The Swindells alleged negligence, strict liability/design defect, strict liability/marketing defect, strict liability

manufacturing defect, breach of implied warranties, res ipsa loquitur, breach of express warranty, gross negligence, and joint enterprise, after Ms. Swindell was allegedly injured from using a VascuTherm unit supplied by JTW. Id. In the Swindell lawsuit, the Swindells allege that on March 19, 2008, Ms. Swindell had surgery on her right foot. Dkt. # 16-2. Following surgery, Wall "applied the VascuTherm unit to her right foot," and instructed the Swindells "to keep the unit on for '24 hours a day- 7 days a week.'" Dkt. # 16-2. Ms. Swindell's healthcare provider was to be charged by ORI for the use of the VascuTherm and, upon conclusion of Ms. Swindell's use of the unit, the device was to be returned.[4]

The Swindells allege that, as a result of Wall's instructions, Ms. Swindell suffered extensive injuries resulting in the full or partial amputation of four toes. Id. The Swindell lawsuit further alleges that the defendants, including ORI, were negligent in training each other on the proper use of the VascuTherm, and that ORI was negligent in failing to warn Ms. Swindell that use in the manner directed by Wall could lead to injury. The Swindells also allege that ORI was negligent in failing to provide instructions or other written materials about the use of the VascuTherm.

After ORI was served as a defendant in the Swindell lawsuit, ORI contacted Nautilus and requested that Nautilus provide a defense and indemnity coverage to ORI. On October 13, 2008, Nautilus sent a letter to ORI President Mark Farrow denying coverage for claims contained in the Swindell lawsuit based on the Exclusion in the Policy. Dkt. # 15-5. Counsel for ORI sent a letter to Nautilus asking it to reconsider its denial of coverage, explaining that the Exclusion should not apply to work that had not yet been completed and, as a result, the Swindell claims do not fall within

---

[4] Defendant disputes that this charge was a "rental fee," and states that Ms. Swindell's provider was never actually billed. Dkt. # 26, at 6. See IV, infra.

the Exclusion. Dkt. # 15-6. ORI further stated that, under Oklahoma law, there is a duty to defend if there is even a possibility of coverage under the insurance contract. Id. Nautilus did not reconsider its position with respect to coverage.

ORI retained outside counsel[5] and, on November 10, 2008, commenced this action against Nautilus in Tulsa County District Court. Nautilus subsequently filed a notice of removal asserting that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy is believed to exceed $75,000. Dkt. # 2. On December 9, 2008, Nautilus agreed in writing to provide ORI with a defense in the Swindell lawsuit.[6] Dkt. # 26-3. On December 17, 2008, Nautilus filed a counterclaim seeking a declaratory judgment that ORI is not covered under the Policy for any damages incurred in the Swindell lawsuit. Dkt. # 7. After cross-motions for summary judgment were filed, ORI and Nautilus filed a joint motion requesting dismissal without prejudice of ORI's bad faith claim against Nautilus, Dkt. # 18, which was granted. Dkt. # 19.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp.

---

[5]  Defendant does not dispute that ORI retained counsel, but disputes the amount of attorney fees incurred to date.

[6]  The letter from Nautilus states that it retained counsel "to protect [ORI's] interests pursuant to the terms and conditions of [the Policy]." Dkt. # 26-3, at 2. However, Nautilus stated that, despite its defense of ORI, there remained causes of action outside of the scope of ORI's CGL coverage for which Nautilus would not make payment for damages. Id. Nautilus further reserved the right to "withdraw from [ORI's] defense . . . if any time it becomes apparent that none of the damages being claimed by the plaintiffs are covered by this policy." Id.

v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

"A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state." Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir.1994). Here, the forum state

is Oklahoma. Under Oklahoma law, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." OKLA STAT. tit 15, § 162; see Harvell v. Goodyear Tire and Rubber Co., 164 P.3d 1028, 1033-34 (Okla. 2006) ("[I]n Oklahoma, the established choice of law rule in contract actions known as lex loci contractus is that, unless the contract terms provide otherwise, the nature, validity, and interpretation of a contract are governed by the law where the contract was made."). Here, the Policy does not include a choice of law provision, nor do the parties contest which state's law should apply. Accordingly, because the Policy appears to have been entered into in Oklahoma for work to be performed by an Oklahoma corporation, the Court will apply Oklahoma law.

Under Oklahoma law, insurance policies are contracts. See OKLA. STAT. tit. 36, § 102; First Bank of Turley, 928 P.2d 298, 302 (Okla. 1996); Silver v. Slusher, 770 P.2d 878, 883 (Okla. 1988); Christian v. Metropolitan Life Ins. Co., 566 P.2d 445, 448 (Okla. 1977). "An insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991). Parties to an insurance contract are "bound by the terms of contract and courts will not undertake to rewrite terms thereof." Id. "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Id.

Whether an insurance contract is ambiguous is a matter of law for the Court to decide. Id. If the terms are unambiguous, clear, and consistent, then they are accepted in their plain and ordinary sense. Id. "If the insurance policy language is doubtful and susceptible to two constructions,

without resort to and following application of the rules of construction, then a genuine ambiguity exists . . . ." Id. at 376-77. When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean." American Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004).

The general declarations of insurance coverage determine the insurance carrier's liability. Policy exclusions "are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy." Dodson, 812 P.2d at 377. "In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer." Id.

A commercial general liability (CGL) policy protects the insured from liability when his work or product damages someone else's property. Farmington Cas. Co. v. Duggan, 417 F.3d 1141, 1142 (10th Cir. 2005). While a standard CGL policy provides coverage for bodily injury and property damage occurring away from the premises owned by or rented to the insured, some policies expressly exclude such coverage in a "products-completed operations hazard" exclusion. See 9A Lee R. Russ and Thomas F. Segalla, Couch on Insurance §129:23 (3d ed. 2009). "Completed operations provisions refer to bodily injury and property damage which occur away from premises owned by or rented to the insured, and after the insured has completed work or relinquished custody of its product." Id. It is not a coverage provision, but an exclusion to the CGL policy. VBF, Inc. v. Chubb Group of Ins. Companies, 263 F.3d 1226, 1232 (10th Cir. 2001). The exclusion applies to "completed work," but does not reach work which is in progress when the damage occurs. See Advantage Homebuilding, LLC v. Maryland Cas. Co., 470 F.3d 1003, 1011 (10th Cir. 2006). See

9

also Farmington Cas. Co., 417 F.3d at 1144 (finding that the products-completed operations hazard provision "applies only when all the work has been completed.") (emphasis in original). The standard products-completed operations hazard exclusions are generally held to be unambiguous as a matter of law. See Goodwin v. Wright, 6 P.3d 1, 8 (Wash. 2000) (citing cases where the standard products-completed operations hazard exclusionary language was found to be unambiguous). Under Oklahoma law, exclusionary provisions in an insurance contract are narrowly construed and "words of exclusion are construed against the insurer and words of inclusion are construed in favor of the insured." Timmons v. Royal Globe Ins., 653 P.2d 907, 913 (Okla. 1982). See also Utica Mut. Ins. Co. v. Voyles, 277 Fed. Appx. 809 (10th Cir. 2008) (unpublished)[7] (noting that Oklahoma courts narrowly construe exclusionary provisions).

**IV.**

To find that ORI is not covered for the claims in the Swindell suit, the Court would have to find that the occurrence falls within the Exclusion to the Policy. To fall within the Exclusion, the injury to Ms. Swindell must have occurred away from ORI's premises after ORI's "work" had been completed. The parties do not dispute that coverage under the Policy would extend to the claims made against ORI for the alleged bodily injury to Ms. Swindell if the Exclusion does not apply.[8] Thus, the critical issue is whether ORI had completed its work prior to the injury to Ms. Swindell.

---

[7] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[8] To the extent that ORI seeks coverage for punitive or exemplary damages sought by Ms. Swindell in the underlying case, the Policy excludes coverage for a claim for indemnification for punitive or exemplary damages. See Dkt. # 26-7, at 39. Defendant is entitled to summary judgment on its request for a declaration that plaintiff is not entitled to coverage for punitive or exemplary damages (Dkt. # 16, at 15), although defendant still has a duty to defend against such damages. See Dkt. # 20, at 9, ¶ 8.

The Exclusion for "products-completed operations hazards,"[9] id. at 23, excludes all "bodily injury" that occurs "away from premises you own or rent" and arises out of "your product"[10] or "your work." Dkt. # 26-7, at 20. Work is deemed completed under the Policy when all of the work called for in the contract has been completed. Id. Plaintiff argues that Ms. Swindell had not completed the use of the VascuTherm at the time her injuries occurred and, thus, ORI's work was not completed. Defendant contends that ORI completed its work when it provided the VascuTherm to JTW, making the Exclusion for completed operations applicable. Defendant also contends that JTW's work was completed when it gave the VascuTherm to Ms. Swindell, and that Ms. Swindell's use of the VascuTherm was not a rental.

The Tenth Circuit has held that a provision that "applies when all the work is completed applies only when all the work has been completed," noting that the "plain language of the products-completed operations hazard provision belies the assertion that the provision can operate when only part of the work is completed." Farmington Cas. Co., 417 F.3d at 1144 (internal citation and quotation marks omitted) (emphasis in original). Generally, exclusionary language will not apply when work is still being performed at the time the injury occurs. See Advantage Homebuilding,

---

[9] Plaintiff argues that the products-completed operations hazards Exclusion might apply only in the context of construction and maintenance work at job sites. However, because the Court finds that the Exclusion does not apply on other grounds, it does not reach the applicability of the Exclusion outside the construction context. Plaintiff also argues that the products-completed hazard operations Exclusion does not generally apply to negligence claims. However, because the Court finds that the Exclusion does not apply on other grounds, it does not reach the applicability of the Exclusion to a negligence claim.

[10] Under the Policy, "your product" does not include "vending machines or other property rented to or located for the use of others but not sold." Dkt. # 26-7, at 21 (emphasis added). Because the Court has determined that the VascuTherm was rented and not sold to Ms. Swindell (see infra), the VascuTherm device does not fall within the definition of "your product" in the Exclusion.

11

LLC, 470 F.3d at 1011. Courts have declined to hold that work is "completed" when equipment is delivered to the end-user, based on the reasoning that so holding would result in the lease "end[ing] just as it began." See Harris v. Westchester Fire Ins. Co., 904 F.2d 319 (5th Cir. 1990).

Whether ORI's work was "completed" at the time of the injury to Ms. Swindell is a two-part question: (1) was ORI's work completed when it gave possession of the unit to JTW and (2) was JTW's work completed when it gave possession of the unit to Ms. Swindell. First, the Court must examine the relationship between ORI and JTW. Despite defendant's argument that ORI completed its work by distributing the VascuTherm to JTW, the Agreement between ORI and JTW clearly belies that contention. The Agreement states that JTW will "act as an agent for ORI in the selling of services of the Vacutherm [sic] Pneumatic Compression products for the Dallas area . . . ." Dkt. # 28-3. An agent is "one who acts on another's behalf and is subject to the other's control. Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1069 (10th Cir. 2007) (citing Restatement (Second) of Agency § 1(1)). In his deposition, ORI President Farrow agreed with the statement that JTW acted as ORI's "agent for getting the product to the marketplace."[11] Dkt. # 28-2, at 8. In addition, in his affidavit, Farrow confirmed that JTW is an agent. Dkt. # 15-3, at 1. Defendant has failed to provide any evidence that JTW was not an agent of ORI, nor does defendant allege that JTW and ORI ended their agency relationship after the unit was given to JTW to distribute on ORI's behalf. Accordingly, the Court finds that JTW was ORI's agent, and ORI's work would be completed when JTW's work was completed.

---

[11] Farrow referred to JTW as his "independent agent." Dkt. # 28-2, at 8. However, the term "independent agent" is typically used in the context of insurance sales. The Agreement and Farrow's testimony clearly show that JTW was an agent of ORI for the placement of VascuTherm units.

The next question is whether JTW's work was completed when it gave possession of the VascuTherm to Ms. Swindell. Plaintiff contends that Ms. Swindell or her insurance provider rented the VascuTherm from JTW/ORI. Defendant argues that her use of the equipment cannot be characterized as a rental. The Agreement states that "all Vascutherms [sic] machines and disposable wraps will remain property of ORI." Dkt. # 28-3. Thus, pursuant to the plain language of the agreement between ORI and JTW, ORI gave possession to its agent, while retaining title to the VascuTherm. The deposition testimony of Farrow confirms that ORI did not sell the VascuTherm units. Dkt. # 26-2, at 27, Dkt. # 28-2, at 7. ORI contends that JTW then rented the VascuTherm to Ms. Swindell based on Farrow's testimony that Ms. Swindell's use of the VascuTherm was a "rental," Dkt. # 28-2, at 5, and Farrow's statement that JTW would rent the VascuTherm to patients and, "[u]pon conclusion of the rental, the VascuTherm device was to be returned." Dkt. # 15-3, at 1. Defendant contends, however, that the use of the VascuTherm was not a rental and JTW's work was completed when Ms. Swindell received the unit for her use. However, it is undisputed that Ms. Swindell was to return the VascuTherm upon completion of her use. Regardless of whether the use of the VascuTherm by Ms. Swindell is classified as a rental, a lease, or temporary possession for medical use, it is most analogous to a rental where the work is not completed until the equipment is returned. See Surdyka v. DeWitt, 784 P.2d 819, 822 (Colo. App. 1989) (no completed operations hazard where the rental equipment had not yet been returned); Sun Ins. Co. of New York v. Hamanne, 306 A.2d 786, 788 (N.H. 1973) (holding that the rental of a machine contemplated its return and was thus not completed until the machine was returned); Southern Guaranty Ins. Co. v. Scott, 266 So.2d 602, 607 (Ala. 1972) (holding that "it appears obvious" that the work was not completed when equipment that was to be returned was still being used). Although defendant

13

disputes the characterization of "rental," it has failed to present any evidence to the contrary. In contrast, plaintiff has presented direct testimonial evidence that Ms. Swindell was to use the equipment and then return it, and thus ORI and JTW's work was not completed until that unit was returned. See Nogales Ave. Baptist Church v. Peyton, 576 P.2d 1164, 1166 (Okla. 1978) (exclusion found not to apply where there was testimony that the work was not completed).

In the alternative, defendant argues that the work was completed with the exception of servicing or maintaining the equipment. While the Policy excludes coverage for work that is completed but requires "service" or "maintenance," see Dkt. # 26-7, at 20, for the reasons stated above it is clear that providing a medical device to a patient who is still using the device is not "completed work" that merely requires servicing or maintaining. Accordingly, ORI's work was not completed at the time of Ms. Swindell's injury.

In sum, although defendant tries to create a genuine issue of material fact by mischaracterizing the relationship between ORI and JTW, the summary judgment record belies defendant's assertions. JTW was ORI's agent and, accordingly, ORI's "work" was not completed at the time of Ms. Swindell's injury. The Exclusion does not apply and ORI is entitled to coverage from Nautilus.

## V.

Finally, plaintiff seeks summary judgment on its claims of breach of duty to defend and breach of contract. The Court finds that defendant has a duty to defend, and plaintiff is entitled to summary judgment on that claim. However, because defendant has agreed to defend ORI, and because ORI dismissed its bad faith claim after the cross-motions for summary judgment were filed, it is unclear whether any issues remain on plaintiff's claim for breach of contract. Accordingly, the

Court denies summary judgment on that claim. Plaintiff is to advise the Court by pleading within fifteen (15) days of this date whether it intends to proceed on its breach of contract claim.

**IT IS THEREFORE ORDERED** that Motion for Summary Judgment and Supporting Brief of Plaintiff and Counterclaim Defendant Orthopedic Resources, Inc. (Dkt. # 15) is **granted in part and denied in part:** it is **granted** as to plaintiff's request for a declaration that it is entitled to coverage under the Policy and the defendant has a duty to defend; it is **denied** as to plaintiff's claim of breach of contract.

**IT IS FURTHER ORDERED** that Defendant Nautilus Insurance Company's Motion for Summary Judgment and Brief in Support (Dkt. # 16) is **granted in part** and **denied in part:** it is **granted** as to defendant's request for a declaration that it is not liable for any punitive or exemplary damages awarded in the underlying suit; it is **denied** as to defendant's request for a declaration that plaintiff's claim is not covered under the Policy.

**DATED** this 6th day of August, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT